The Honorable James L. Robart

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR14-232JLR |
| Plaintiff, | UNITED STATES SENTENCING MEMORANDUM |
| v. | |
| DAVID RICHARD SCHULTZ, II | |
| Defendant. | |

## I.   INTRODUCTION.

On November 5, 2013, an explosion and subsequent fire destroyed an apartment building in Bellevue, Washington. The incident caused more than $2 million in property damage. Unfortunately, the monetary loss was the least of the carnage caused by this explosion. An elderly and distinguished member of the Bellevue community died of injuries she sustained escaping the conflagration. Other residents of the apartment building sustained significant (and in one case disabling) injuries as a result of the explosion and fire.

This explosion and fire, and the resulting damages, were the direct result of the greed and wanton recklessness of the three defendants charged in this case. The Defendants worked together to make "hash oil," also known as "Butane Honey Oil"

U.S. Sentencing Memo - 1
*Schultz*, CR14-232JLR

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

(BHO), a concentrated form of marijuana created by washing marijuana plant material with butane, a flammable and explosive gas. The three men engaged in this illicit manufacturing process in an apartment building, knowing that it was potentially dangerous. Their joint pursuit of a more concentrated marijuana high, and the profits they could make from selling the BHO, caused the explosion and subsequent devastation.

This Defendant, Schultz, was by far the most culpable of the three men. Schultz was the one with the prior experience making BHO. Schultz was the one who was doubtless actually engaged in the process at the time of the explosion. And, most damningly, Schultz continued to engage in this dangerous and illegal conduct *after* the explosion, including at a hotel building in California at the time of his arrest in this matter.

Unfortunately, this explosion is not an isolated occurrence in this District. There have been dozens of other, similar explosions as drug traffickers take advantage of the more permissive marijuana environment to engage in similar activity.

Based on all of these facts, the government respectfully joins the Probation Office in recommending the Court sentence Schultz to 120 months, the statutory maximum. This is the sentence necessary to impose just punishment, to deter others from engaging in similar dangerous conduct, to reflect the seriousness of the offense, and to protect the public from future crimes of the Defendant.

## II.   FACTS.

### A.   The BHO Problem.

The effective de-criminalization of marijuana has apparently created a demand for new ways of obtaining a stronger high from its active ingredients, beyond simply smoking marijuana plant material. BHO is one of the products that is being manufactured and sold to meet that demand. While not a new development (hash oil extraction has been known to exist back into the mid-1990s), its popularity has skyrocketed recently.

U.S. Sentencing Memo - 2
*Schultz*, CR14-232JLR

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

BHO is typically a waxy, oily substance, usually yellow in color. It can be vaporized ("dabbed"), allowing the user to inhale the concentrated active THC. It is also easy to add to foodstuffs, creating "edibles" (or so-called "medibles" in the medical marijuana context).

BHO can be made using a number of different processes. However, the most common – and unfortunately, the most dangerous – method involves packing a cylinder with marijuana plant material, and injecting (often referred to in the business as "shooting" or "blasting") butane through the cylinder.[1] The manufacturer typically uses the parts of the marijuana plant that are not appealing to traditional smokers, which allows the grower to make money off parts of the plant that were formerly sometimes just thrown away.

The plant material is placed in the tube, and the butane is released into the top of the tube, which is held vertically. Butane is a gas, but it is heavier than air, so it flows downward and turns into a liquid as it moves through the tube, dissolving the cannabinoids/THC, which flows out of the bottom of the tube. The manufacturer then boils off the butane (often by using a hot water bath, somewhat like a double boiler), leaving behind the concentrated BHO. The resulting substance is referred to by a number of slang terms, including "BHO," "honey oil," "dabs," "wax," "shatter," and other terms.

The process is highly hazardous. Butane is highly flammable, odorless, colorless and heavier than air. Once released, it can seep into low-lying areas and sit there for a period of time. When sufficiently concentrated, any spark or other ignition source can cause a significant explosion. Butane comes in canisters that contain the gas in a pressurized and compressed fashion. This means that if a primary explosion occurs during the process, any unused butane canisters nearby can cause serious secondary explosions.

---

[1] Hash oil can also be made using other solvents and reactions. While these other methods are much safer, they are more time consuming and expensive.

U.S. Sentencing Memo - 3
*Schultz*, CR14-232JLR

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

As this activity has spread over the last year or so, there has been a veritable epidemic of explosions, both in this District and across the country.  Most of the explosions result in property damage as well as serious injuries and the occasional fatality.  While most of the people injured are the participants themselves, there have been a number of instances where innocent bystanders (including children) have also been harmed.

**B.    Offense Conduct.**

The basic facts are accurately described in the PSR.  To summarize, Schultz and his co-defendants were making BHO in an apartment in Building "KK" at the Hampton Greens Apartment complex in Bellevue.  Co-defendant Strycharske was the tenant, and co-defendant Kaplan was Strycharske's roommate.  While Schultz did not live at the apartment permanently, he frequently slept over.

According to interviews, Schultz held himself out as being an expert in the process BHO process, claiming that he had been processing marijuana into hash oil for a considerable period of time.  Schultz was evidently teaching the other two men the process.  There was some discussion of Strycharske, Kaplan and Schultz trying to set up a business to make and sell the product.  Indeed, during his original interview after the incident, Strycharske described Schultz as his "business partner."

The three men began making BHO at the Bellevue apartment on a frequent basis, which caused concerns to workers and neighbors at the complex.  In October of 2013, a workman tasked with making repairs at the complex saw a man fitting Schultz's description making hash oil using a glass tube connected to a compressor that was outside on the balcony.  The worker asked Schultz if he was making "hash" and Schultz responded that he was, for his "dispensary."  The worker reported his observations to the complex manager, who ultimately called the police to complain.

On October 17, 2013, Bellevue Police sent an officer to contact the occupants of the apartment in response to the complaint.  The officer knocked on the door and was

U.S. Sentencing Memo - 4
*Schultz*, CR14-232JLR

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

greeted by Kaplan. Another man was present, and identified himself as Schultz. A third person was present, who was not identified, but whose description matched Strycharske.

The Officer was not allowed into the apartment by the occupants but could smell marijuana. The officer said he could also see a can containing what he believed to be butane. Both Kaplan and Schultz told the officer they had "medical" marijuana cards, and Kaplan was somewhat confrontational with the officer. The officer asked them if they were making hash oil, and both denied doing so. The officer advised the men that making hash oil in the apartment would be a violation of their lease agreement, and potentially dangerous. The occupants again denied making hash oil, and the officer ended his contact with the men.

On November 5, 2013, multiple 911 calls were made reporting the explosion and subsequent fire at the complex. Responding Bellevue Fire and Police units found the building containing Strycharske, Kaplan and Schultz's apartment (building KK) engulfed in flames. The building was heavily damaged as a result of the fire, and ultimately was condemned and demolished, resulting in more than $1.5 million in damages to the structure.[2] Photographs of the immediate aftermath of the explosion and fire are attached hereto as Exhibit 1.

During the explosion and subsequent fire, a number of individuals were injured, some seriously. One woman, N.C., age 87, was a resident of building KK. She was forced to flee the building as a result of the fire, and fell and fractured her pelvis while doing so. She later expired due to complications from that injury. Another tenant, N.G., was living in a third-floor apartment in building KK, and was unable to leave through the front door of her unit due to flames engulfing the staircase. She ultimately had to drop out of her third-floor window to escape the flames, and sustained serious fractures in her left leg, a broken right ankle, a fractured disc in her spine, and a broken left arm. She

---

[2] Building KK is still in the process of being reconstructed. According to the apartment owner's insurance company, some $1.5 million has been spent to date, and the insurer estimates the total claim will approach $2.4 million.

U.S. Sentencing Memo - 5
*Schultz*, CR14-232JLR

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

reportedly suffers permanent impairments as a result of these injuries.[3] Yet another tenant, V.N., also had to jump from her second-floor unit's deck to escape and fractured her leg in the process. The government anticipates that at least some of these victims will wish to address the court at sentencing. In addition to the physical injuries, many of the residents lost all of their belongings in the fire.[4]

The subsequent fire investigation by Bellevue Fire and ATF agents determined that the explosion originated in the apartment shared by Schultz, Strycharske and Kaplan. Investigators found fragments of a glass cylinder packed with marijuana plant material, as well as numerous exploded and burned cans of butane fuel (photos of which are included in Exhibit 1). The investigation determined that the explosion and fire was caused by butane fuel vapor being ignited during the BHO manufacturing process.

All three Defendants were also injured. This Defendant, Schultz, sustained the most significant injuries, sustaining burns to his head, hands, arms and legs. The burns are consistent with his having been close to the explosion, likely making BHO at the time. Of note, Schultz was the only occupant fully clothed at the time of the explosion, which is also consistent with his having been engaged in the BHO manufacturing process at the time of the explosion.

All three men were interviewed after the incident. Schultz was interviewed twice that day and gave several conflicting and implausible accounts of what happened. During the first interview at the scene Schultz admitted that he had spent the last several nights sleeping on Strycharske and Kaplan's couch. He then claimed that he was actually outside the apartment during the explosion, having walked to his car to retrieve something from the vehicle. Schultz claimed that he opened the door when he returned to the apartment, was hit by flames, and then grabbed some butane canisters out of the apartment. Schultz claimed he had no idea what caused the explosion.

---

[3] N.G.'s medical bills alone exceed $250,000.
[4] To date, the government has received restitution claims for personal property losses (some insured) of close to $100,000.

U.S. Sentencing Memo - 6
*Schultz*, CR14-232JLR

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Detectives re-interviewed Schultz at the hospital later that same day. During this second interview, Schultz gave investigators a different story. This time, Schultz admitted that he was asleep inside the apartment when the explosion occurred and that he retrieved a can of butane and pushed it out of the door. When confronted with the inconsistency with his prior story, Schultz tried a third version, claiming that he went out to his car *after* the explosion, returned to help his friends, and sustained burns then.

During this second interview, Schultz admitted to making hash oil, but denied using butane to do so, claiming he used a different method. When confronted with the large amount of butane found in the debris, Schultz claimed that he purchased the butane for Kaplan's use; he then said he purchased it for another individual whom he knew only as "Dr. J."

Strycharske and Kaplan were both interviewed in the days following the explosion. Both admitted that the men were making BHO in the apartment in the days leading up to the explosion, although Kaplan minimized the extent of his knowledge and involvement. Both gave consistent accounts of Schultz being the person with the knowledge of how to make BHO.

C.     **Federal Charges – Schultz's Arrest.**

This office adopted this case for federal prosecution, and a complaint was filed on July 17, 2014 charging all three men. Strycharske and Kaplan were arrested without incident soon thereafter.

Schultz had since left the state, and was not located until August 7, 2014. On that date, Los Angeles Police officers contacted Schultz in a motel parking lot and discovered his federal warrant on this matter. In a search incident to arrest, Schultz was found with a small amount of hash oil on his person. Schultz admitted that he has a larger amount of the substance in his hotel room, and that he was manufacturing it for sale to marijuana dispensaries in the Los Angeles area.

U.S. Sentencing Memo - 7
*Schultz*, CR14-232JLR

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Officers searched Schultz's motel room and discovered all of the implements of a hash oil manufacturing lab, including glass tubes packed with marijuana plant material, filters, pressure cookers, scales, and (most important) butane gas canisters. Officers also found a large amount of hash oil. Schultz was charged in Los Angeles County Superior Court with manufacturing concentrated cannabis and sentenced to 365 days in custody and five years of probation.[5]

### III.   GUIDELINE CALCULATION.

The government concurs with the Probation Office's calculation of the advisory Guideline range. The applicable Guideline is USSG § 2D1.10, which provides that the Court should use the *higher* of the drug guideline base offense level (2D1.1) plus a 3-level increase, *or* a base offense level of 20. Here, it is unknown how much marijuana was used by Schultz and his co-defendants. Accordingly, the parties have agreed that the base offense level is a level 20.

Probation has assessed a two-level increase for Schultz's leadership role as compared to the other two co-defendants, pursuant to USSG § 3B1.1(c). The government agrees that is appropriate. Schultz plead guilty in a timely fashion, and is therefore entitled to the full 3-level reduction for acceptance of responsibility.

Accordingly, the Total Offense Level is 19. At CHC II, this results in an advisory Guideline range of 33 – 41 months.

It should be noted that the applicable Guideline, USSG § 2D1.10 does not have any specific offense characteristics to account for the fact that a risky drug manufacturing operation in fact exploded, or that any individual was injured. Put another way, assume that a particular BHO lab is discovered and dismantled prior to it exploding. The base offense level for that hypothetical lab is the same as for one where the operation exploded, resulting in damage to a structure, significant injuries, or even a fatality.

---

[5] Defendant has several other convictions for larceny and various marijuana offenses. However, none of these other offenses score. Accordingly, he is Criminal History Category II. However, as noted in the PSR, an argument could be made that Defendant's CHC is underrepresented at that level. PSR, ¶ 95.

U.S. Sentencing Memo - 8
*Schultz*, CR14-232JLR

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## IV. RECOMMENDATION AND ARGUMENT.

The United States respectfully joins the Probation Office in recommending a custodial sentence of 120 months, the statutory maximum. While a substantial upward variance from the Guideline range, this is nonetheless the sentence necessary when the Court applies the sentencing factors set forth at 18 U.S.C. § 3553(a). In particular, a lengthy sentence is necessary to (A) "reflect the nature and circumstances of the offense" and to "reflect the seriousness of the offense . . . and to provide just punishment for the offense;" (B) "to afford adequate deterrence to criminal conduct," and (C) "to protect the public from further crimes of the Defendant."

### A. The Seriousness of the Offense and Just Punishment.

The seriousness of this offense cannot be overstated. Defendants made a conscious choice to illegally manufacture a controlled substance, *using a flammable, explosive gas*, inside a multi-family apartment building. They engaged in this manufacturing process despite having actual knowledge that it was dangerous, with a reckless and callous disregard for the consequences to their neighbors.

This defendant, Schultz, was the primary actor in that scheme. Schultz was the leader of his little band. Schultz was the one with the most knowledge of the manufacturing process. And, the evidence shows, Schultz was the one who almost certainly caused the actual explosion, and lied about it afterwards.

Schultz and his co-defendants' greed caused millions of dollars in property damage, and hundreds of thousands of dollars in medical costs. However, the monetary losses are the least important impact of their scheme. The explosion caused serious injuries and suffering to several individuals. It also resulted in the death of a distinguished member of the community. This Court has victim impact statements from a number of the neighbors, and the government anticipates that some additional statements will come in prior to sentencing, and that certain victims may wish to address the Court at the time of the sentencing hearing.

U.S. Sentencing Memo - 9
*Schultz*, CR14-232JLR

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

These results call out for a significant sentence, well in excess of the advisory Guideline range. As set forth above, the applicable Guideline contains no specific offense characteristics or other enhancements that reflect the fact that the lab exploded, much less the magnitude of the damages caused by the explosion. The same Guideline range would apply even if Schultz and his cohorts had been arrested and charged after the Bellevue Police contact in October as applies now, after the explosion and its results. As such, that range is wholly inadequate, and a substantial upward variance under 18 U.S.C. § 3553(a) is therefore necessary.[6]

## B.     The Need to Provide Adequate Deterrence.

A significant sentence is also necessary to deter others from engaging in similar criminal conduct. BHO manufacturing is a growing and serious problem in this District and elsewhere in the country.[7]

Washington's experiment in decriminalizing marijuana has made marijuana widely available and acceptable. Unfortunately, it has also apparently served to encourage some to "push the envelope" in search of a new and stronger product containing marijuana's active ingredient - THC. The result has been a rash of explosions, resultant property damage, injuries, and in this case a fatality.

If Washington's experiment in decriminalizing marijuana is to succeed, it is important to send a public message that merely because *some* marijuana-related activity is now tolerated, that does not mean that those who go too far (as Mr. Schultz and his co-defendants surely did) will escape prosecution and significant criminal sanction. A lengthy sentence will hopefully serve to drive that important point home to the community.

---

[6] In addition, as noted in the PSR (¶ 94) a substantial upward departure is called for under 18 U.S.S.G. § 3553(b)(1) and USSG § 5K2.0(a)(2), in that the offense involved factors not adequately taken into consideration by the applicable Guideline, namely the magnitude of the property damages, physical injuries, and death related to the incident. USSG §§ 5K2.1, 5K2.2, and 5K2.5.

[7] Over the last year, the government has filed seven cases involving dangerous BHO manufacturing operations, and anticipates filing additional cases in the future.

U.S. Sentencing Memo - 10
*Schultz*, CR14-232JLR

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**C. The Need to Protect the Public, and to Reflect Defendant's History and Characteristics.**

As set forth above and in the PSR (¶ 48), at the time of his arrest in August of 2014 Schultz was arrested in Los Angeles in possession of butane gas canisters, processed BHO, and all of the other equipment necessary to make BHO. This time, he was evidently making the BHO in a hotel, again placing the other occupants in danger. Schultz evidently learned nothing from the havoc he caused just ten months earlier and continued to recklessly pursue making money off ever more potent forms of marijuana – regardless of whom he placed in danger in the process. These facts distinguish Schultz from his co-defendants, who evidently got out of the business of making BHO after the explosion at their apartment. They also call for a lengthier sentence.

**D. Restitution.**

Pursuant to 18 U.S.C. § 3663A(c)(1)(A)(ii), this Court should order full restitution to any victim of an offense under 18 U.S.C. § 856(a), to which Defendant plead guilty in this matter. Restitution shall include losses related to damage to property and to bodily injuries to the victims. Defendant agreed restitution is appropriate in this matter per the Plea Agreement as well.

Victims continue to accrue costs related to this incident. As to the damage to the building itself (which was ultimately owned by a pension fund), it is still in the process of being rebuilt, after being torn down as a total loss. At this point, the owner and the owner's insurance company estimate that demolishing and replacing the building will amount to $1,593,614.70, plus $88,542 in loss rental income for the period where the building was destroyed.

Loss amounts for some of the individual victims have been submitted to the Court through the Probation Office, and currently add up to almost $370,000. However, damages (in particular, for medical costs related to N.G.'s injuries, which already exceed

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

$250,000) continue to accrue, and some victims have not yet submitted a full itemization of their losses.

The government and the Probation Office continue to work to compile a total restitution figure for the Court. The Probation Office has recommended deferring the final restitution calculation for up to 90 days, and the government agrees that deferring a final restitution figure is appropriate given the current status of this effort. The government notes that the co-defendants are to be sentenced on July 20, 2015, and hopes to have more precise figures by that date.

## V. CONCLUSION.

Defendant Schultz manufactured a controlled substance in a multi-family apartment complex, knowing full well that the process posed a significant risk of an explosion. He did it anyway, with horrific results. His conduct calls for a significant penalty, both for its own sake and to deter others. For all of these reasons, the government recommends a custodial sentence of 120 months, to be followed by three years of supervised release.

Respectfully submitted this 1st day of June, 2015.

ANNETTE L. HAYES
United States Attorney

*/s/ Vincent T. Lombardi*
VINCENT T. LOMBARDI
Assistant United States Attorney
700 Stewart Street, Suite 5220
Seattle, Washington  98101
Phone: 206-553-5178
E-mail: vince.lombardi@usdoj.gov

U.S. Sentencing Memo - 12
*Schultz*, CR14-232JLR

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970